UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
                                    :
EMMANUEL PIERRE,                    :
                                    :
                  Petitioner,       :      08 CV 10849 (KBF)
                                    :
          -v-                       :      MEMORANDUM OPINION
                                    :         AND ORDER
ROBERT ERCOLE, Superintendent,      :
Green Haven Correctional Facility,  :
                                    :
                  Respondent.       :
                                    :
------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____          │
│ DATE FILED: July 25, 2012            │
└─────────────────────────────────────┘
```

KATHERINE B. FORREST, District Judge:

     Petitioner Emmanuel Pierre ("petitioner") filed a timely

pro se petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 on December 15, 2008 (the "petition").  A jury in

the Supreme Court of the State of New York convicted petitioner

of one count of Murder in the Second Degree (N.Y. Penal

Law § 125.25).  On that conviction, petitioner was sentenced to

a term of imprisonment of twenty-five years to life.  The

Appellate Division, First Department unanimously affirmed the

conviction on June 21, 2007, and the New York Court of Appeals

subsequently denied petitioner leave to appeal.  People v.

Pierre, 838 N.Y.S.2d 546 (App. Div. 2007), lv. denied, 842

N.Y.S.2d 792 (2007).

     Petitioner challenges his conviction on the same five

grounds he previously raised in the state court below: (1) the

1

verdict was against the weight of the evidence; (2) there was no reasonable view of the evidence to support the trial court's charge to the jury that petitioner could also be convicted of committing the crime as an accomplice of his friend Joshua Cayenne; (3) the trial court improperly precluded defense counsel from eliciting exculpatory evidence; (4) the trial court admitted into evidence hearsay testimony regarding computer "instant messages" and telephone voice mail; and (5) the sentence was excessive. (See generally Dkt. No. 1.)

On April 15, 2009, this Court allowed petitioner to amend his petition in order to assert an ineffective assistance of counsel claim on the grounds that his trial counsel failed to (i) properly investigate petitioner's claim for actual innocence; and (ii) object to the trial court's exclusion of statements from two unavailable witnesses. See Pierre v. Ercole, 607 F. Supp. 2d 605 (S.D.N.Y. 2009).

For the reasons set forth below, the petition is DENIED.

I.   FACTUAL BACKGROUND[1]

A.   The Crime

In January 2002, petitioner found out that Sandra Bonaventure, with whom petitioner was romantically involved, was

---

[1] This Court recites only the facts necessary to resolution of the instant petition. Additional factual background can be found in the submissions in briefs on this petition, found at docket nos. 17 and 33.

pregnant with his child.  Petitioner entreated her to abort the child, but she resisted, and his entreaties became threats.

After the school year ended, on June 19, 2002, Ms. Bonaventure came to visit petitioner at his home in Brooklyn to discuss her pregnancy.  Evidence shows that Ms. Bonaventure took a Metro North train, and then the subway, to the Utica Avenue station in Brooklyn, arriving in the early morning on June 20. Telephone records show that she communicated by phone call and text message with petitioner during her trip to Brooklyn, the last such communication taking place around 2:50 a.m. Thereafter, petitioner murdered Ms. Bonaventure.  An autopsy revealed that Ms. Bonaventure was about seven months pregnant and that her cause of death was asphyxiation.

Sometime between 3:30 and 4:00 a.m. the morning of June 20, petitioner drove the victim's body to the home of his friend, Joshua Cayenne, whom he had told about Ms. Bonaventure's pregnancy and her refusal to have an abortion.  Petitioner and Cayenne then drove into Manhattan and deposited the body in a deserted section of a far-west midtown block.  Cayenne took Ms. Bonaventure's credit card which he found lying in the car.

A homeless man found Ms. Bonaventure's body five days later and alerted the police.  The police traced Ms. Bonaventure's credit card to Cayenne and arrested him, upon which Cayenne admitted to his role in aiding petitioner to dispose of the

victim's body.  The police arrested petitioner on April 15, 2003.

B.  <u>The Trial</u>

The State argued during petitioner's trial that petitioner murdered Ms. Bonaventure to free himself from the obligations associated with supporting a baby.  Cayenne testified that petitioner had arrived at his home in the early morning hours on June 20, 2002 with the body of the victim in the car, and that he assisted petitioner in disposing of the victim's body.

Petitioner's counsel argued that it was actually Cayenne who committed the murder and later named petitioner as the perpetrator to receive a drastically reduced sentence for his cooperation, namely a probationary sentence with no jail time.

On April 6, 2005, a jury in the Supreme Court of the State of New York found petitioner guilty of one count of Murder in the Second Degree.

C.  <u>The Appeal</u>

Petitioner appealed his conviction based on the five grounds stated above.  On June 21, 2007, the Appellate Division, First Department unanimously affirmed petitioner's conviction, and the New York Court of Appeals subsequently denied petitioner leave to appeal.  <u>Pierre</u>, 838 N.Y.S.2d 546, <u>lv. denied</u>, 842 N.Y.S.2d 792.

4

D.   <u>The Petition</u>

As stated, the petition raises the same five grounds for relief that were ultimately denied by the First Department. Upon filing the petition, petitioner simultaneously requested a stay to exhaust his state court remedies.  The Court denied the motion for a stay without prejudice, as the petition presented no unexhausted claims.  <u>See</u> <u>Pierre v. Ercole</u>, 594 F. Supp. 2d 469 (S.D.N.Y. 2009).

Petitioner subsequently amended his petition on April 14, 2009 to add an ineffective assistance of counsel claim that he had been concurrently pursuing in the Supreme Court of the State of New York by way of a CPL § 440.10 motion.  (Dkt. No. 4.)  He claimed that his trial counsel provided ineffective assistance in failing to (1) advise petitioner of his right to waive trial by jury and opt for a bench trial, (2) investigate properly petitioner's claim for actual innocence, and (3) object to the court's exclusion of the statements of two unavailable witnesses.

This Court granted in part petitioner's motion to amend, allowing the amendment with respect to his second and third ineffective-assistance claims.  The Court also construed petitioner's motion to amend to include a renewal of his motion for a stay, and stayed the federal proceeding pending resolution of petitioner's CPL § 440.10 motion and exhaustion of his state

remedies.  See Pierre, 607 F. Supp. 2d at 605.  The Supreme

Court of the State of New York ultimately rejected those

ineffective counsel claims when it denied petitioner's

CPL § 440.10 motion.  People v. Pierre, No. 1746-02 (Apr. 9,

2009), lv. denied, No. 1746-02 (N.Y. App. Div. June 30, 2009).

The Court lifted the stay on September 10, 2009.  (Dkt. No. 5.)

On February 18, 2010, petitioner sought leave to amend his

petition for the second time in order to add three new claims

that he had not directly pursued in state court: (1) that

respondent misstated the cell phone record evidence it cited at

trial; (2) that his trial counsel was ineffective for failure to

object to the exclusion of certain testimony; and (3) that his

trial counsel was ineffective for failure to take certain

measurements of a car and a driveway.  (Dkt. No. 25.)  On the

first issue, the Court concluded that petitioner did not need to

further amend his petition and was free to raise the issue in

his reply papers.  On the second issue, the Court noted that it

had already granted petitioner leave to amend on that point.  On

the third issue, the Court denied petitioner's leave to amend on

the "measurement evidence" issue because he had failed to

present the issue to the state courts, barring its consideration

in the federal proceeding.  See Pierre v. Ercole, 08 Civ. 10849,

2010 WL 1375141, at *5-6 (S.D.N.Y. Mar. 26, 2010).  Insofar as

petitioner was implicitly seeking to stay the case, this Court

also refused to stay petitioner's case for a second time in order to permit him to exhaust the "measurement evidence" theory because petitioner did not show good cause for failing to raise the issue on direct appeal or in his first CPL § 440.10 motion, despite having understood the need to exhaust the state court remedies in his first motion to amend.  See id. at *4.

On April 2, 2010, petitioner moved this Court to reconsider its denial of his leave to amend with regard to the "measurement evidence" theory.  (Dkt. No. 29.)  On April 12, 2010, the Court deferred decision on that motion, instructing that it would address the motion when deciding the merits of the petition. The Court takes up that motion below in Part II. C., infra.

II.  DISCUSSION

    A.  Standard of Review

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), presenting a significant hurdle to federal review of constitutional claims adjudicated on the merits by state court.  Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.  AEDPA

> precludes a federal court from granting a writ of habeas corpus to a state prisoner unless the state court's adjudication of his claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'

Wetzel v. Lambert, 132 S. Ct. 1195, 1198 (2012) (quoting 28 U.S.C. § 2254(d)(1)).

Moreover, federal courts must presume that the state court decision was correct, and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court held that under § 2254(d), a "habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). In the same decision, the Supreme Court made it clear that this standard is difficult to meet. Id.; see also Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Federal courts are instructed to be "highly deferential" to state court rulings and to give those rulings the benefit of the doubt. See Cullen, 131 S. Ct. at 1398 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

Finally, federal courts only engage in collateral review of convictions, as direct review through the state judiciary is the principle vehicle for challenging a conviction. See Bentley v. Scully, 41 F.3d 818, 823-24 (2d Cir. 1994). The role of federal habeas relating to state court convictions has consequently become secondary and narrow; success on such a petition is

8

limited to those whom society has "grievously wronged." <u>Brecht</u>
<u>v. Abrahamson</u>, 507 U.S. 619, 637 (1993).  In fact, a petitioner
is not entitled to habeas relief on trial error unless he can
establish that it resulted in actual prejudice.  See <u>id.</u> at 637.
Habeas relief is not appropriate where there is merely a
"reasonable possibility" that trial error contributed to the
verdict.  <u>Id.</u>

    B.    Exhaustion

As a threshold matter, in order to obtain federal habeas
relief, petitioner must have exhausted all avenues of state
judicial relief for each of the constitutional bases he raises
in his petition.  See 28 U.S.C. § 2254(b)(1)(A); <u>Picard v.</u>
<u>Connor</u>, 404 U.S. 270, 275 (1971); <u>Doresy v. Kelly</u>, 112 F.3d 50,
52 (2d Cir. 1997).  Federal courts may deem the claims exhausted
if petitioner no longer has any available avenue to pursue
unexhausted claims in state court.  See <u>Castille v. Peoples</u>, 489
U.S. 346, 351 (1989); <u>Grey v. Hoke</u>, 933 F.2d 117, 120–21 (2d
Cir. 1991).  However, "the procedural bar that gives rise to
exhaustion provides an independent and adequate state-law ground
for the conviction and sentence, and thus prevents federal
habeas corpus review of the defaulted claim." <u>Gray v.</u>
<u>Netherland</u>, 518 U.S. 152, 162, (1996); <u>see also</u> <u>Carmona v.</u>
<u>United States Bureau of Prisons</u>, 243 F.3d 629, 633 (2d Cir.
2001).

To overcome that procedural bar, petitioner must demonstrate (1) cause for failing to raise the claim properly in state court and prejudice resulting from the alleged constitutional error; or (2) that the failure to address the claim on habeas would result in a "fundamental miscarriage of justice." See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

> Objective impediments to compliance with the procedural rules which would excuse a petitioner's noncompliance for habeas purposes include: (1) the factual or legal basis of a claim was not reasonably available to petitioner's counsel; (2) interference by officials made compliance impracticable; and (3) ineffective assistance of counsel.

Roa v. Portuondo, 548 F. Supp. 2d 56, 59 (S.D.N.Y. 2008) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). A fundamental miscarriage of justice arises only in an "extraordinary case" in which "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 492 (1986); accord Lebron v. Mann, 40 F.3d 561, 564 (2d Cir. 1994).

Petitioner has exhausted the possibilities for state court review for the original five grounds of relief asserted in state court. He raised those claims to the Appellate Division on direct appeal and, when the claim was rejected, see 838 N.Y.S.2d 546, sought leave to appeal to the New York Court of Appeals. As stated above, leave was denied. 842 N.Y.S.2d 792.

Petitioner has also exhausted the two claims of ineffective assistance of counsel, as he raised them in his C.P.L. § 440.10 motion.  The Supreme Court of the State of New York denied petitioner's motion, and petitioner was unsuccessful in his attempt to seek leave to appeal from the Appellate Division. Pierre, No. 1746-02 (Apr. 9, 2009), lv. denied, No. 1746-02 (N.Y. App. Div. June 30, 2009).  The stay in this Court was lifted on September 10, 2009.  (Dkt. No. 5.)

As stated, petitioner's claims in his second leave to amend are not exhausted.  Accordingly, the Court now considers petitioner's motion to reconsider, which also deals with exhaustion issues.

C.   <u>Motion to reconsider the denial of leave to amend</u>

On March 26, 2010, the Court denied petitioner's second request for leave to amend because he had failed to present to the state courts the "measurement evidence" claim.  <u>See</u> <u>Pierre</u>, 2010 WL 1375141 at *5-6.  After petitioner moved the Court to reconsider its denial of leave to amend (Dkt. No. 29), on April 12, 2010 the Court deferred decision on that motion, instructing that it would address the motion when deciding the merits of the petition.  (Dkt. No. 29.)  The Court now denies that motion.

The standard for a motion to reconsider is strict. "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court

overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion for reconsideration should not be granted when the moving party seeks solely to relitigate an issue already decided." Id. The "reluctance to reconsider decisions, however, is discretionary upon the court; it is not a limit on the court's power." Lebron v. Sanders, No. 02 Civ. 6327, 2004 WL 1459520, at *2 (S.D.N.Y. June 28, 2004).

In accordance with Local Civil Rule 6.3, petitioner's motion for reconsideration is not time barred as it was filed within ten days after the docketing of the Court's determination of the original motion. Local Civ. R. 6.3.

Although requests for leave to amend should "freely give leave when justice so requires," Fed. R. Civ. P. 15(a); see, e.g. Foman v. Davis, 371 U.S. 178, 182 (1962), denial is appropriate when the proposed amendment would be futile. See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

Petitioner argues for reconsideration on the grounds that amendment is necessary to raise the issue that Cayenne's story implicating petitioner in the murder is "demonstrably false" and "physically impossible." (Dkt. No. 29.) Cayenne testified that petitioner arrived at Cayenne's home on the night of the murder with the body of the victim in the back seat of his father's

Mercedes Benz.  (R. 521-22 (Cayenne Testimony).)[2]  Cayenne explained that he and petitioner opened both back doors of the car in order to move the body from the back seat to the trunk of the car.  (R. 523-26.)

Petitioner presents measurements of Cayenne's driveway to demonstrate that the driveway was too narrow to have both back doors of the car open at the same time,[3] calling into question the reliability of Cayenne's story.  (Dkt. No. 29.)

That argument is a variant of petitioner's ineffective assistance claim that his attorney failed to investigate his claim of innocence.  Despite pursuing the claim of ineffective counsel for failing to investigate a claim of innocence in the Supreme Court of the State of New York by way of a CPL § 440.10 motion, petitioner never raised this particular "measurement evidence" argument.  (See Dkt. No. 4.)  For an ineffective representation claim, "all of [the] allegations must have been presented to the state courts, allowing them the 'opportunity to consider all the circumstances and cumulative effect of the claims as a whole."  Caballero v. Keane, 42 F.3d 738, 740-41 (2d Cir. 1994) (quoting Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991)) (brackets and emphasis in original).  The

---

[2] "R." refers to the record submitted in accordance with this motion (Dkt. 12-16).
[3] Petitioner states that the width of his father's car is 65 inches, the width of the car with doors open on both sides spans 149 inches, and the width of the driveway from house to adjacent house is 106 inches.

failure to raise this ineffective assistance of counsel claim on direct appeal prohibits federal habeas review, unless petitioner can overcome the procedural bar.

As noted, to bypass the procedural bar, petitioner must demonstrate (1) cause for default and resulting prejudice, or (2) that allowing the bar to stand would result in a fundamental miscarriage of justice. See Thompson, 501 U.S. at 750. Petitioner has not made any arguments regarding his failure to raise the claim in state court. (See Dkt. Nos. 25, 29.) Instead, he argues that he should be entitled to federal habeas review of an otherwise procedurally barred claim because allowing his conviction to stand would result in a "miscarriage of justice." See Thompson, 501 U.S. at 750; (Dkt. No. 33.).  To meet this high bar, petitioner must demonstrate "actual innocence" with "new, reliable evidence." See Schlup v. Delo, 513 U.S. 298, 324 (1995).

The Court is not convinced that failure to measure the car and driveway presents an "extraordinary case" or that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." See Murray, 477 U.S. at 492. Although the precise measurements of the driveway and car may be newly presented evidence, pictures of the side door of the house, the driveway, and the front of the house with the driveway were admitted into evidence during the trial, allowing

14

the jury an opportunity to evaluate Cayenne's testimony as to the precise manner by which the two men moved the body from the back seat to the trunk.  (See R. 590-95 (Cayenne Testimony).) Furthermore, while the measurements might eliminate the feasibility of both automobile doors being open to their fullest extent, it remains possible that both men were on opposite sides of the car with the doors at least partially open, or that the body was removed prior to the car being fully parked in the driveway.  That the presentation to a jury of these measurements "would have changed the jury's view of the matter seems so remote as to require, under current law, dismissal of the [habeas] petition."  See Lebron v. Mann, 40 F.3d 561, 566 (2d Cir. 1994).

For the foregoing reasons, the Court DENIES petitioner's motion for reconsideration.

   D.   Analysis of Habeas Claims

      1.   Claim that the verdict was against the weight of
           the evidence

Petitioner first claims that the verdict was not supported by sufficient non-accomplice evidence and was against the weight of the evidence.  On direct appeal, petitioner put that same claim to the Appellate Division.  The First Department declined to review the claim in the interest of justice, as petitioner failed to preserve that argument.  Pierre, 838 N.Y.S.2d at

15

547-48.  The First Department's decision was based on a "state law ground that is independent of the federal question and adequate to support the judgment," thus barring the claim from federal habeas review.  See Thompson, 501 U.S. at 729.

Petitioner does nothing to overcome the procedural bar by showing (1) cause for failing to raise the claim in state court, or (2) that allowing the bar to stand would result in a fundamental miscarriage of justice.  See id. at 750.  Here, petitioner cannot show cause excusing his default, nor does he point to any new evidence that suggests he is actually innocent.  See Schlup, 513 U.S. at 332.

Even if petitioner's argument were preserved, the claim is without merit because other evidence corroborates Cayenne's testimony.  A petitioner can only obtain habeas relief if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); see Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995).  Here, it is not apparent from the record that petitioner is actually innocent of the crime for which he was convicted.  The State adduced strong proof of petitioner's motive to murder Ms. Bonaventure at trial.  Undisputable DNA evidence established that petitioner was the father of the victim's unborn child, and his own words indicated that he

16

wished the victim to disappear.  (See R. 346 (DeLeon Testimony).)  Such testimony demonstrated that petitioner was infuriated by Ms. Bonaventure's refusal to terminate her pregnancy.  Furthermore, phone records indicate that the victim was coming to visit petitioner the night of her murder.  In fact, she placed four calls and sent petitioner thirty-four separate text messages, the last of which occurred at 2:50 a.m., supporting the time frame advanced by Cayenne.  (R. 255 (Egan Testimony).)  The weight of the evidence was more than sufficient for a jury to find petitioner guilty.

Accordingly, there is an independent and adequate state law ground that prevents this Court from granting habeas relief, and petitioner has failed to adduce enough evidence to overcome this procedural bar.  See Thompson, 501 U.S. at 723.

### 2.   Improper jury instructions claim

Petitioner next claims that there was no reasonable view of the evidence to support the trial court's jury charge instructing that petitioner could also be convicted of murder as Cayenne's accomplice.  The First Department found that the trial court properly charged the jury, as the evidence reasonably supported the accomplice theory charge.

In conducting habeas review, this Court must decide if the conviction violated federal law as determined by the Supreme Court.  See Wetzel, 132 S. Ct. at 1198.  For an error in a jury

instruction to rise to the level of such a constitutional violation, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the [petitioner] by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973).  Only if an "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," is it now actionable.  Id. at 147; see also Henderson v. Kibbe, 431 U.S. 145 (1977); Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001).

Here, the First Department properly held that the evidence could be interpreted to permit the jury to find petitioner guilty as an accomplice.  There was no evidence that Cayenne had any motive to kill the victim.  Circumstantial evidence, including phone records indicating that the victim was on her way to see petitioner, supports an inference that if Cayenne killed the victim, he did so in cooperation with petitioner.  In presenting the "accomplice" charge, the trial judge gave jurors the option of finding petitioner guilty as Cayenne's accomplice, but did not encourage them to do so.  The trial judge properly instructed that if the jury were to find petitioner guilty under this alternate theory, they "must be satisfied beyond a reasonable doubt that [defendant] actually engaged in conduct which intentionally aided Cayenne in strangling and thereby

18

causing the death of Miss Bonaventure." (R. 1038-43 (Final Charge).)

The First Department's finding that the jury instruction was proper did not constitute an unreasonable application of Supreme Court law.

### 3.   Claim regarding the statements of two witnesses

Petitioner also asserts that he was deprived of his due process right to a fair trial when the trial court precluded his counsel from introducing police reports containing statements of two homeless men who could not be located at the time of trial.[4] The defense wanted to demonstrate that the victim's body had been disposed several days after June 20, when petitioner was in Cleveland.

The Supreme Court has held that "[o]ut-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements." Chambers v. Mississippi, 410 U.S. 284, 298 (1973).  Furthermore, a state court's determination regarding the reliability of hearsay statements should not be disturbed unless it was an "unreasonable determination" based on the evidence presented at trial.  See 28 U.S.C. § 2254(d)(2).

---

[4] The two men had told police when they thought they first noticed the garbage bag with the body of the victim.

"Deference to [a trial judge's] judgment is particularly appropriate on federal habeas review." Nicholson v. Walker, 100 Fed. Appx. 848, 850 (2d Cir. 2004).

The First Department found that petitioner's right to present a defense had not been violated by the trial court's ruling that these statements lacked "sufficient indicia of reliability." See Chambers, 410 U.S. at 298. The Court finds no reason to disturb that holding. It was entirely reasonable for the trial judge to determine that the statements were hearsay evidence that should not be presented to the jury: the statements were not sworn, corroborated, or subject to cross-examination. Furthermore, the police reports demonstrate that the two men gave highly unreliable estimates of the day on which they supposedly first noticed the particular garbage bag. Indeed, one of the men admitted to being intoxicated at the time of his observation.

The state court's finding that the hearsay evidence lacked sufficient indicia of reliability did not constitute an unreasonable application of Supreme Court law. Accordingly, plaintiff's claim in this issue fails.

    4.  Claim regarding the admission of "instant message" and voicemail communications

Petitioner asserts that his right to a fair trial was compromised by the admission of two computer "instant message"

conversations and one telephone voicemail because they were
unreliable hearsay evidence.  Two of those communications show
petitioner threatening to harm the victim if she revealed her
pregnancy to his family; the third "instant message"
conversation only went to petitioner's state of mind regarding
his reticence to having a baby.

The First Department rejected that argument as it pertained
to the voicemail and one of the "instant message" conversations
because it was procedurally barred: petitioner did not object to
the admission of that evidence at trial.  As stated above,
habeas relief cannot be granted if the state court's decision
rested upon a state law ground that was independent of the
federal issue and adequate to support the judgment.  See
Thompson 501 U.S. at 729.  New York's contemporaneous objection
rule, C.P.L. § 470.05(2), presents such an independent and
adequate ground.  Petitioner has not demonstrated that he has
either cause for the default, or that failure to consider the
claim would result in a fundamental miscarriage of justice.[5]  See
id. at 750.

With regard to the second "instant message" conversation,
the First Department also found that the trial court properly
allowed testimony from the victim's cousin about her "instant

---

[5] The First Department also found that such an objection would have been
overruled, as circumstantial evidence authenticated the instant message, and
testimony from a witness authenticated the voicemail.

message" conversation with petitioner.  Petitioner did object to
admission of that testimony during trial.  The trial court
entertained a significant colloquy (R. 188-98 (Sidebar during
Valery Testimony)), after which it allowed the cousin to testify
as to her recollection of the "instant message" conversation.
The testimony itself provided minimal information to the jury
except that petitioner said he "wasn't ready for [the baby]."
(R. 198 (Valery Testimony).)  The conversation was further
authenticated with circumstantial evidence of petitioner's
"screen name," as testified to by Cayenne – i.e. there was no
evidence that anyone had a motive or an opportunity to
impersonate petitioner by using his screen name.

    This Court does not find error in the admission of the
cousin's testimony.  The "instant message" conversation offered
information about petitioner's state of mind that was presented
elsewhere.  Even if it were admitted in error, there would be no
"actual prejudice."  See United States v. Lane, 474 U.S. 438,
449 (1986).  Given the weight of the evidence, the admission of
that testimony did not have a "substantial and injurious effect
or influence in determining the jury's verdict."  Brecht v.
Abrahamson, 507 U.S. 617, 638 (1993).  As such, habeas relief is
not appropriate on this claim.

5.   <u>Excessive sentence claim</u>

Petitioner claims that his sentence was excessive in light of his background, good character, and lack of prior criminal history.  The First Department found no basis for reducing the sentence and rejected petitioner's request to do so.

Petitioner's excessive sentence claim does not raise a federal constitutional issue warranting habeas review.  <u>See</u> <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.").  The sentence of twenty-five years to life imprisonment falls within the range prescribed by state law.  (<u>See</u> N.Y. Penal Law § 70.00(3)(a)(i).) Accordingly, this Court has no basis to find that the sentence imposed was unlawful or unconstitutional.

6.   <u>Ineffective counsel claims</u>

Petitioner claims that his trial counsel provided ineffective counsel by failing to (a) investigate properly petitioner's claim for actual innocence, and (b) object to the court's exclusion of the statements of two unavailable witnesses.  (Dkt. No. 4.)  Petitioner raised those same claims, stated in federal and state constitutional terms, in a CPL § 440.10 motion to the Supreme Court of the State of New York.  That court summarily rejected the petitioner's

post-conviction motion for a new trial based on those grounds.
Pierre, No. 1746-02 (Apr. 9, 2009).

The Supreme Court has held that in order to prevail on an
ineffective assistance of counsel claim, petitioner must
establish both that (i) his counsel's performance "fell below an
objective standard of reasonableness" and that (ii) "there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceedings would have been
different." Strickland v. Washington, 466 U.S. 668, 694 (1984).
"Judicial scrutiny of counsel's performance must be highly
deferential." Id. at 689.

Under that standard, petitioner cannot prevail on his
ineffective assistance claim. On the allegation that counsel
failed to adequately explore defendant's innocence, the
petitioner's counsel acted reasonably. His counsel, for
example, vigorously cross-examined pathologist Dr. James Gill to
demonstrate that he might have overestimated the length of time
the victim had been dead when her body was discovered. (R. 301
(Gill Testimony).) This line of questioning furthered the
defense's story that petitioner was not in town when the murder
occurred.

Petitioner also alleges that his counsel erred by failing
to present to the jury facts regarding Cayenne's alleged
admission to a friend (Dwayne Morais), prior to the police

24

finding the body, that he himself strangled Ms. Bonaventure
(Dkt. No. 33).  Contrary to petitioner's assertions, his
counsel's very first question to Mr. Morais was, "Isn't it true
Josh Cayenne admitted to you that Josh Cayenne strangled Sandra
Bonaventure?"  (R. 398 (Morais Testimony).)  On cross-
examination, counsel also questioned Cayenne about his statement
to Morais that he had strangled Ms. Bonaventure.  (R. 600
(Cayenne Testimony).)  Accordingly, there was ample evidence on
that front before the jury.

On the exclusion of evidence from two unavailable
witnesses, the state court correctly noted the defense counsel's
efforts to convince the trial court to admit that hearsay
evidence.  See Pierre, No. 1746-02 (Apr. 9, 2009).  Counsel
supplemented his request at sidebar on March 30, 2005 with a
nine-page letter to support his request for admission of this
evidence, but the trial court ultimately decided that the
statements were too unreliable to be admitted.  See id.  The
state court concluded that "counsel had performed his best given
the evidence." Pierre, No. 1746-02 (Apr. 9, 2009).

That the jurors either rejected petitioner's alibi, or
believed that if Cayenne had actually murdered the victim, he
must have acted in concert with petitioner, cannot be attributed
to counsel's performance.  The state court correctly found that
there was no deficiency in the representation provided by

25

petitioner's attorney.  That finding did not constitute an unreasonable application of Supreme Court law; thus, habeas relief is denied in this regard.

III. CONCLUSION

The petition for habeas corpus is DENIED.

In addition, the Court declines to issue a certificate of appealability.  Petitioner has not made a substantial showing of a denial of a federal right pursuant to 28 U.S.C. § 2253(c), and appellate review is therefore not warranted.  See Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).

The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

The Clerk of Court is directed to close this case.

SO ORDERED:

Dated:     New York, New York
           July 24, 2012

                                    _____
                                    Katherine B. Forrest
                                    United States District Judge

26